Rcce: pt # 0000734

ORIGINAL

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EASTERN SHAWNEE TRIBE OF OKLAHOMA
127 West Oneida Street
Seneca, Missouri 64865

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

CIVIL CASE NO. 06-917 L

FILED
DEC 28 2006
U.S. COURT OF FEDERAL CLAIMS

---

## COMPLAINT

### A. INTRODUCTION

1. This is an action for money damages, with interest, against the Defendant United States of America. This case arises out of Defendant's breaches and continuing breaches of its constitutional, statutory, regulatory, treaty, common law and other legal, accounting, fiduciary, administrative and management duties owed to Plaintiff to generate, invest and manage the Plaintiff's tribal trust assets and property in the manner prescribed by applicable law.

### B. PARTIES

2. Plaintiff is the EASTERN SHAWNEE TRIBE OF OKLAHOMA one of three (3) federally-recognized Shawnee tribes that constitute the modern successor tribes of the historic Shawnee Nation. Plaintiff is recognized by the United States as a sovereign Indian tribe, under the protection of the United States, with legal rights and

responsibilities. The Plaintiff has a governing body duly recognized by the Secretary of the Interior. The Plaintiff is also recognized by the United States as a Tribe which is eligible for the special programs and services provided by the United States to Indians because of their status as Indians, and because of the Plaintiff's treaties and agreements with the United States, various Acts of Congress and federal common law.

3. Defendant THE UNITED STATES OF AMERICA (hereinafter referred to as the United States) is a body politic existing pursuant to the Constitution of the United States of America.

**C. JURISDICTION**

4. This Court has jurisdiction over the subject matter of this action under the Tucker Act, 28 U.S.C. §1491 and the Indian Tucker Act 28 U.S.C. §1505 in that this action involves claims brought by an Indian tribe residing within the territorial limits of the United States, against the United States for money damages, arising under the constitution, laws, treaties and regulations of the United States, Executive Orders of the President and federal common law governing the administration and management of property and assets held by the United States in trust for the Plaintiff. In addition thereto, this action would be cognizable in the Court of Federal Claims if the Plaintiff were not an Indian Tribe, band or group. The Court also has jurisdiction over the subject matter under the Constitution of the United States and the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C.§ 4001 et seq., which required the Defendant to provide the Plaintiff with a full and complete accounting of the holder's funds to the earliest possible date. 25 U.S.C. § 4044.

## D. STATEMENT OF FACTS

5. Plaintiff occupies land which is located in the north east section of the State of Oklahoma. Plaintiff was most recently organized under the Oklahoma Indian Welfare Act of 1936 (49 Stat. 1967) also known as the Thomas-Rogers Act (hereinafter "Act"). See also, Public Law 88-413, approved August 10, 1964 [H. R. 10483] 78 Stat. 387. The Act is a United States federal law that extended the Indian Reorganization Act of 1934 which sought to return some form of tribal government to the many tribes in Indian Territory, including Plaintiff herein. This act extended the existing law to include those tribes within the boundaries of the state of Oklahoma which had been divided up by a series of land allotments Acts.

6. The Act states in pertinent part as follows:

> "That the Secretary of the Interior is hereby authorized, in his discretion, to acquire by purchase, relinquishment, gift, exchange, or assignment, any interests in lands, water rights, surface rights to lands, within or without existing Indian reservations, including trust or otherwise restricted lands now in Indian ownership: Provided, that such lands shall be agricultural and grazing lands of good character and quality in proportion to the respective needs of the particular Indian or Indians for whom such purchases are made. Title to all lands so acquired shall be taken in the name of the United States, in trust for the tribe, band, group, or individual Indian for whose benefit such land is so acquired, ...."

7. Defendant has acquired such interests in lands, water rights, surface rights to lands, within and without then existing Indian reservations and holds same in trust for the benefit of plaintiff.

8. Plaintiff has adopted a constitution which was approved by the Assistant Secretary of the Interior on November 7, 1939.

9. Plaintiff has entered into numerous treaties with state and federal governments since the French and Indian War. These include the signed the Treaty of Easton in 1758; the Royal Proclamation of 1763; the Stanwix treaty, the Treaty of Camp Charlotte; and the Treaty of Greenville. In 1817, the Ohio Shawnee signed the Treaty of Fort Meigs, ceding their remaining lands in exchange for three reservations in Wapaughkonetta, Hog Creek (near Ada) and Lewistown (here together with the Seneca). Missouri joined the Union in 1821 and, after the Treaty of St. Louis in 1825, the 1,400 Missouri Shawnees were forcibly relocated from Cape Girardeau to southeastern Kansas, close to the Neosho River.

10. In 1831, the Lewistown group of Seneca-Shawnee left for the Indian territory (present-day Oklahoma). During this time, the remaining 400 Ohio Shawnee in Wapaughkonetta and Hog Creek surrendered their land and moved to the Shawnee Reserve in Kansas. After the Civil War, the Shawnee in Kansas were once again dispelled and moved to Oklahoma—whereupon the Shawnee part of the former Lewistown group became known as the *Eastern Shawnee* (Plaintiffs).

11. The United States has a fiduciary obligation to protect the Plaintiffs lands and the their interest therein. Many of these lands contain timber and other natural resources and are valuable for recreational and a variety of other purposes.

12. Under the terms of its treaties, and under other applicable law, tribal land held in trust and the trust resources located on the Plaintiff's lands are inalienable except as authorized by Congress, or by the terms and conditions of the Plaintiff's treaties with the United States and the Plaintiff's organic documents. See, Plaintiff's Constitution, approved by a duly authorized representative of the Secretary of Interior. Congress has granted the Secretary of the Interior the authority to approve certain limited conveyances of certain interests in the Plaintiff's trust lands and trust resources, including but not limited to: leases, easements, rights-of-way, resource harvesting and resource use agreements. Federal law establishes the terms and conditions under which such conveyances, leases and agreements may be made. Federal law also generally requires that compensation be paid to the Plaintiff for the conveyance and/or use of its trust lands and trust resources.

13. By various treaties, Executive Orders, and Acts of Congress, commencing with statutes adopted more than a century ago, Congress authorized the Secretary of the Interior to collect income from tribal trust property and to deposit such trust income in the United States Treasury and other depositary institutions for the benefit of the Plaintiff. Some of these authorizations and subsequent statutes, directed that interest be paid on tribal trust funds, and required that such trust funds be invested. See. E.g. Act of February 12, 1929, ch. 178 § 1, 45 Stat. 1164, codified as amended 25 U.S.C. §161a (1982); Act of June 24, 1938, ch. 648 §1, 52 Stat 1037, codified as amended, 25

U.S.C. § 162 (a), and the Act of October 4, 1984, Pub.L. 98-451, 98 Stat. 1729, codified as amended, 25 U.S.C. § 161a (a) (2000). Because of the enactment of these statutes the United States assumed a statutory duty which runs concurrently with its common law obligations to properly administer, manage and protect the Plaintiff's trust assets, monies and property for the highest and best use of the Plaintiff.

14. As the court found in Chippewa Cree Tribe of the Rocky Boy Reservation v. United States, 69 Fed. Cl. 639, (2006), legislation enacted by Congress over the past century has consistently required the United States to increase the productivity of funds that it holds in trust for Indian Tribes. Osage Tribe of Indians of Oklahoma v. United States, No. 990550L (Sept 21, 2006).

15. Since its establishment of a government-to-government relationship with the Plaintiff, the Defendant has assumed control and management over the Plaintiff's trust property and trust resources. The Defendant's duty with regard to the management and administration of the Plaintiff's trust assets is well described in guidelines found in 25 C.F.R. § 115.01 through and including §115. 1001. In this capacity the Defendant has approved leases, easements, rights-of-way and other uses and conveyances of the property and the resources located therein. Defendant has also approved various third party uses and taking of said land and resources. In so doing the Defendant assumed responsibility for the collection, deposit and investment of the income generated or which should have been generated by such conveyances and use rights.

16. Because the United States holds the Plaintiff's lands, resources and the proceeds generated by and from the use, sale, or taking of said resources in trust, it has assumed the obligations of a trustee. U.S. v. Mitchell, 463 U.S. 206, 225 (1983);

Cobell v. Norton, 240 F. 3d 1081 (D.C. Cir. 2001). As trustee, the United States has a fiduciary duty to the Plaintiff to administer the trust with the greatest skill and care possessed by a trustee. The United States has charged itself with a moral obligation of the highest responsibility and trust in its conduct with Indian tribes and its conduct should therefore be judged by the most exacting fiduciary standards. Cobell 240 F. 3d at 1099 (quoting Seminole Nation v. United States, 316. U.S. 286, 297 (1942). This includes a duty to insure that the tribal trust property, funds and assets are protected, preserved and managed in full compliance with the Defendant's trust duties and applicable law.

17. The United States Court of Federal Claims has addressed the statutory obligations of the United States under 25 U.S.C. §§ 161a and 161b, and 162a, and has consistently held the United States responsible for investing Indian trust funds in the highest yielding investment vehicles available to the funds in question. See. Mitchell v. U.S. 664 F.2d 265, Ct. of Cl. 1981. Cobell v. Norton, 240 F. 3d 1081 (D.C. Cir 2001), Cheyenne Arapaho Tribe of Indians of Oklahoma et al v. United States, 512 F. 2d 1390 (March 19, 1975).

18. The trust obligation of the United States includes, among other duties, the duty to insure that tribal trust property and trust funds are protected, preserved and managed so as to insure the highest and best use of those assets and funds, and where applicable, the highest revenue to the tribal owner consistent with the trust character of the property. Said duty requires the United States to further insure that the Plaintiff is afforded its full rights to compensation for any taking of trust assets as required by the Constitution of the United States and other applicable law, and that it

administers those duties with the greatest skill and care possessed by a trustee.

19. The Defendant, acting through its Secretary of the Interior, also has the responsibility to:

A. Provide adequate systems for accounting for and reporting trust fund balances;

B. Provide adequate controls over receipts and disbursements;

C. Provide periodic and timely reconciliations to insure the accuracy of accounts;

D. Determine accurate cash balances;

E. Prepare and supply account holders with periodic statements of their account performance and with balances of their account to be available on a daily basis;

F. Establish consistent written policies and procedures for trust fund management and accounting;

G. Provide adequate staffing, supervision and training for trust funds management and accounting; and

H. Appropriately manage the natural resources located within the boundaries of Indian reservations and trust lands.

See 25 U.S.C. §162d, See also 25 U.S.C. § 4011.

20. The trust obligations of the United States include, among others, the duty to (a) exercise opportunities to obtain monetary benefits from the Plaintiff's trust land and resources, (b) enter into reasonable contracts to advance those opportunities, (c) timely collect the trust funds rightly owed to the Plaintiff, (d) timely create trust accounts to hold those funds, (e) insure that the monies owed or paid for the loss or use of trust lands and resources are placed in those accounts in a timely manner, (f) maintain adequate records with respect to the Plaintiff's trust property, (g) maintain adequate

systems and controls to guard against errors or dishonesty, (h) provide regular and accurate accountings to the Plaintiff as the trust beneficiary, (i) refrain from self-dealing or benefiting from the management of the trust property, (j) insure the Federal Government's compliance with the protections afforded the Plaintiff under the Constitution of the United States and other applicable law, and (k) consult with the Plaintiff regarding the management of its trust property and the implementation of the Government's treaty obligations.

21. Through its agencies, primarily the Department of the Interior and the Department of Treasury, Defendant in fact has undertaken and continues to undertake the responsibilities to account for, manage and otherwise act as a fiduciary trustee on behalf of the Plaintiff.

22. For at least the past several decades, Defendant's accounting for, management of, and exercise of other fiduciary responsibilities and control over Indian trust funds has been thoroughly examined and highly criticized by private entities, various government agencies, Congress and the courts. Problems identified include, but are not limited to, the Defendant's inability to account for funds due to its loss of or failure to keep records, undue delays in making investments, and poor investment decision-making, such as investing in failed financial institutions. The Defendant's continuing widespread and well-documented Indian trust fund mismanagement, and other breaches of trust have affected and continue to affect the Plaintiff's trust assets and have caused and continue to cause monetary losses to the Plaintiff.

23. The Defendant has failed to keep records of and/ or has failed to keep proper records regarding the Plaintiff's trust accounts and assets, and these failures

continue today. Defendant has never provided the Plaintiff with a full and meaningful accounting of its trust assets and trust funds. Indeed, before filing this action, the Plaintiff filed a complaint in the United States District Court for the District of Columbia demanding a full accounting of its trust accounts, trust assets and trust property. To date, the Defendant has failed to provide that accounting or other sufficient information which would otherwise afford the Plaintiff the ability to determine whether, and to what extent, it has suffered a loss as a result of the Defendant's continual wrongdoing or other breaches of trust.

24. The Defendant has failed to obtain and continues to fail to obtain the maximum investment return possible (within allowable investments under law) on the Plaintiff's trust funds. This breach of fiduciary duty has caused and continues to cause monetary loss to the Plaintiff.

25. Complaints voiced by tribal leaders and other third parties led the Congress of the United States to undertake an investigation into Defendant's management and oversight over tribal trust accounts. E.g. Cobell 204 F. 3d 1081 (D.C. Cir 2001). Congress has recognized the gross breaches of trust described herein, as have the General Accounting Office and the Office of Management and Budget. The Office of Management and Budget consistently placed the financial management of Indian trust funds, including those belonging to the Plaintiff, as a "high risk liability" to the United States.

## E. EQUITABLE TOLLING/DELAYED ACCRUAL

26. By the Act of December 22, 1987, Pub. L. 100-202, 101 Stat. 1329, Congress imposed two requirements on the Defendant: (1) to audit and reconcile tribal

trust funds and (2) to provide the Plaintiff and other tribes with an accounting of such funds. Congress reaffirmed these two mandates in subsequent statues, namely, the Act of October 22, 1989, Pub. L. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. 101-512, 104 Stat. 1915; and the Act of November 3, 1991, Pub. L. 101-154, 105 Stat. 990. By these Acts, Congress further required that the Defendant certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

27. To protect the rights of tribes until the aforementioned accountings of their trust funds could be completed, Congress has included, in a series of Interior Department Appropriations Acts, language providing that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See, Act of November 5, 1990, Pub. L. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. 104-134, 110 Stat, 1341; Act of September 30, 1996, Pub. L. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. 105-227, 112 Stat. 2681; Act of November 29, 1999, Pub. L. 106-113, 113 Stat. 1501; Act of October 11, 2000, Pub. L. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. 107-63. Pub.L. 109-158 (December 30, 2005).

28. To satisfy the requirements of the Act of December 22, 1987, the Defendant, among other things, retained the accounting firm of Arthur Andersen LLP to prepare and issue reports to the Plaintiff and other federally recognized Tribes. The Arthur Anderson Report that the Plaintiff received was not sufficient to draw any conclusion on the accuracy of the accounting of the Plaintiff's trust funds, or the acceptability of the investment management of those funds by the Defendant. Thus, it was not a complete reconciliation of the Plaintiff's trust fund accounts. The Report failed to cover account activity during a sizable period of the time during which the Defendant exercised control and management over the Plaintiff's trust assets. The Report was also limited to an accounting of the Plaintiff's monetary trust funds and thus, did not provide any type of assessment of, or accounting for other trust assets such as the Plaintiff's land, and natural resources which are now and have been under the management and control of the Defendant.

29. The United States Government, through its agents, has exercised management and control over the Plaintiff's tribal trust assets since the inception of the Plaintiff's government-to-government relationship with the United States. No effort to attempt to audit the Plaintiff's trust accounts was undertaken before Fiscal Year 1988. The beginning cash and investment balances in the Plaintiff's tribal trust accounts have never been audited or reconciled to date. Instead, the United States Government at its agents, acting as the tribe's "fiduciary" merely carried forward those unaudited starting balances when it undertook the accounting and reconciliation efforts required by the Act of December 22, 1987.

30. The deficiencies and gaps endemic to the Defendant's accounting system, have severely limited the Plaintiff's ability to determine the full extent of its losses as a result of the Defendant's breach of its fiduciary duties. For the reasons stated herein, this problem has not been cured by the Defendant's preparation and release of the Plaintiff's Arthur Andersen Report prepared pursuant to the Act of December 22, 1987.

31. To address this problem, the Plaintiff has commenced an action against the Secretary of the Interior, the Secretary of the Treasury and the Special Trustee for Indian Affairs, in the United States District Court for the District of Columbia, Red Cliff Band v. Kempthorne, et. al. To the extent that such an accounting, to which the Plaintiff is entitled determines or otherwise reveals that the Plaintiff has one or more additional monetary claims against the Defendant, the Plaintiff seeks damages on those claims in this action. The Plaintiff will also seek leave to amend this complaint to allege those additional claims and to plead the claims already advanced herein with more specificity, at such time as the Defendant provides the Plaintiff with information which is currently in its exclusive possession and control.

32. Defendant's management and involvement with monies and properties which are, were or should have been, held in trust for the Plaintiff, dates back to the time that the Plaintiff entered into its treaties with the United States. The Report that the Defendant and its contractor, the Arthur Andersen LLP has prepared pursuant to the Act of December 22, 1987 and subsequent federal statutes, fails miserably in its attempt to reconcile the Plaintiff's trust fund balances. The Arthur Andersen Report also fails to cover the entire period during which the Defendant managed the Plaintiff's trust funds and assets and is therefore incomplete.

33. The Defendant fraudulently concealed the operative facts concerning the existence of the causes of action, claims and other instances of mismanagement of trust property, assets and monies, which form the basis of this complaint, so as to prevent the Plaintiff from fully prosecuting or pursuing its rights to a full and complete accounting and other rights arising out of the Defendant's failures as alleged herein, including, but not limited to, mismanagement of trust properties, assets, monies and other damages.

34. In furtherance of their fraudulent concealment and deception, the Defendant concocted a scheme, artifice, or plan to create the false appearance of a complete and meaningful accounting or reconciliation of funds or monies otherwise due Plaintiff and continuously, for a period of in excess of 100 years, up to and including the present time, have continued to conceal the facts which would support Plaintiff's claims, so as to delay the accrual of any cause of action otherwise arising out of the mismanagement of Plaintiff's properties, land and other trust assets.

35. Defendant has continued up to the present time, to fail to render any bonafide reconciliation and accounting despite being legally obligated to provide such under applicable law, so as to toll and/or render any limitations of the actions, statutes, regulations or other rule of law, which is premised upon the pretense of a reconciliation void and meaningless.

## F. BREACH OF FIDUCIARY DUTY

36. The Plaintiff alleges and incorporates by reference the allegations contained in paragraphs 1-35 above.

37. Defendant has breached its fiduciary duty, as described above, through its

conduct and omissions stated as follows:

A. The Defendant has breached its fiduciary duty to the Plaintiff by failing to obtain the highest available rates of interest and earnings on the Plaintiff's trust funds, as required by 25 U.S.C.§§ 155, 161, 161a and 162a, 162b and its trust responsibilities to the Plaintiff.

B. The Defendant has breached its fiduciary duty to the Plaintiff by failing to deposit the Plaintiff's trust monies in interest bearing accounts in a timely manner.

C. The Defendant has breached its fiduciary duty to the Plaintiff by failing to properly invest the Plaintiff's trust monies in a timely manner.

D. The Defendant has breached its fiduciary duty to the Plaintiff by prematurely withdrawing the Plaintiff's trust funds from interest generating accounts.

E. The Defendant has breached its fiduciary duty to the Plaintiff by entering into or authorizing below market value contracts, leases, permits, rights-of-way and other similar arrangements dealing with the Plaintiff's real property and natural resources.

F. The Defendant has breached its fiduciary duty to the Plaintiff by generally failing to obtain the highest and best price for the use and taking of Plaintiff's trust assets.

G. The Defendant has breached its fiduciary duty to the Plaintiff by failing to charge, or collect rents, royalties or other proceeds on leases, permits, rights-of-way and other similar transactions involving the Plaintiff's trust properties and/or by failing to collect and deposit those monies in interest bearing accounts in a timely manner.

H. The Defendant has breached its fiduciary duty to the Plaintiff by allowing third parties to use, remove, encumber, waste, damage, spoil and otherwise take possession of the Plaintiff's trust assets without consultation with the Plaintiff and/or without adequate compensation.

I. The Defendant has breached its fiduciary duty to the Plaintiff by allowing churches, schools, government agencies and other third parties to have the use and benefit of Plaintiffs trust properties without adequate compensation.

J. The Defendant has breached its fiduciary duty to the Plaintiff by allowing third parties to cause damage to the Plaintiff's trust properties and natural resources without paying compensation to the Plaintiff.

K. The Defendant has breached its fiduciary duty to the Plaintiff by failing to

enforce the reverter clause contained in various federal statutes and in various deeds and use agreements dealing with the Plaintiff's real property. See, e.g. 25 U.S.C. § 280.

L. The Defendant has breached its fiduciary duty to the Plaintiff by failing to properly invest and manage the Plaintiff's judgment funds, congressionally appropriated funds and other trust monies in a timely manner and in a manner which obtains the maximum investment return possible.

M. The Defendant has breached its fiduciary duty to the Plaintiff by failing to administer and manage the Plaintiff's trust lands, funds and assets with the greatest skill and care required of a trustee.

N. The Defendant has breached its fiduciary duty to the Plaintiff by failing to exercise opportunities which would have maximized the productive use of the Plaintiff's land and resources and the income derived there from.

O. The Defendant has breached its fiduciary duty to the Plaintiff by failing to provide the consideration it agreed to provide, or was required to provide, in and pursuant to treaties, statutes, appropriations, contracts and other agreements involving the Plaintiff .

P. The Defendant has breached its fiduciary duty to the Plaintiff by conveying or allowing the conveyance of the Plaintiff's trust assets to third parties without adequate compensation and protections.

Q. The Defendant has breached its fiduciary duty to the Plaintiff by engaging in self dealing and/or by converting the Plaintiff's trust assets to its own use without adequate compensation.

R. The Defendant has breached its fiduciary duty to the Plaintiff by failing to adhere to the requirements of 25 U.S.C. §162d.

S. The Defendant has breached its fiduciary duty to the Plaintiff by failing to pay the Plaintiff the interest or compound interest on certain liquidated amounts and judgments. This has resulted in severe breaches of fiduciary duty including, without limitation, unconscionable consideration awards. Said payments were unconscionable because the Plaintiff was not placed in the position that they would have occupied, and would occupy today, if the Defendant had performed its duty.

T. The Defendant has breached its fiduciary duty to the Plaintiff, by failing to charge, enforce and collect late penalties, breach of contract penalties, trespass damages and penalties, insurance payments, certain cost share and other payment obligations, condemnation awards, delinquent rent payments, damage claims and other similar damages and interest thereon.

U. The Defendant has breached its fiduciary duty to the Plaintiff, by failing to require lessors and others users of trust assets owned by the Plaintiff to procure bonds, insurance or surety arrangements to protect the rights of the Plaintiff and to collect from those sureties damages owed to the Plaintiff.

## G. WHEREFORE THE PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF

1. Consequential damages according to proof,
2. Incidental damages according to proof,
3. Compound interest on liquidated amount and judgment awards.
4. Pre-judgment interest,
5. Costs of the suit herein,
6. Attorneys fees, according to statute
7. Any and all other relief or damages as permitted by this Court or applicable law.

DATED THIS 29 of December, 2006.

COUNSEL OF RECORD
FOR PLAINTIFF

Brian J. Leinbach, Esq.
California State ~~Bar~~ No.161739
bleinbach@elllaw.com
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Blvd, 16th Floor
Los Angeles, California 90067
Tel: (310) 552-3800
Fax: (310) 552-9434
**Attorney for Plaintiff**

OF COUNSEL:

Walter J. Lack, Esq.
California State Bar No. 57550
wlack@elllaw.com
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Blvd, 16th Floor
Los Angeles, California 90067
Tel: (310) 552-3800
Fax: (310) 552-9434

Patricia A. Marks, Esq.
U.S. District Court Bar No. 446702
Markspattyesq@aol.com
15992 A.E. Mullinix Road
Woodbine, Maryland 21797-8440
Tel: (410) 489-4553
Fax: (301) 854-5117

Thomas V. Girardi, Esq.
California State Bar No. 36603
sfujimoto@girardikeese.com
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017-1904
Tel: (213) 977-0211
Fax: (213) 481-1554