UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EASTERN SHAWNEE TRIBE OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Docket No. 06-917L |
| v. | ) | |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Pages: 1 through 57

Place: Washington, D.C.

Date: June 10, 2008

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EASTERN SHAWNEE TRIBE OF OKLAHOMA, Plaintiff, | ) | |
| v. | ) | Docket No. 06-917L |
| UNITED STATES, Defendant. | ) | |

Courtroom 7, Room 508
National Courts Building
717 Madison Place NW
Washington, D.C.

Tuesday,
June 10, 2008

The parties met, pursuant to the notice of the Court, at 10:00 a.m.

BEFORE: HONORABLE CHARLES F. LETTOW
Judge

APPEARANCES:

For the Plaintiff:

BRIAN J. LEINBACH, Esquire
Engstrom, Lipscomb & Lack
10100 Santa Monica Boulevard, 16th Floor
Los Angeles, California 90067-4107
(310) 552-3800

For the Defendant:

JODY HELEN SCHWARZ, Esquire
ANTHONY P. HOANG, Esquire
U.S. Department of Justice
Environment & Natural Resources Division
601 D Street, N.W., Room 3150
Washington, D.C. 20044
(202) 305-0245 / 305-0241

APPEARANCES: (Cont'd)

Also Present

SHANI WALKER, Esquire
Department of the Interior
Washington, D.C.

P R O C E E D I N G S

(10:00 a.m.)

THE CLERK: All rise. The United States Court of Federal Claims is now in session, the Honorable Charles Lettow presiding.

THE COURT: Please be seated. It seems incredibly stuffy in here this morning. I think we'll all survive. It's just part of our weather pattern.

The case before the Court this morning is Eastern Shawnee Tribe of Oklahoma v. United States, No. 06-917. Mr. Leinbach, is that you?

MR. LEINBACH: Yes, good morning, Your Honor.

THE COURT: Would you identify yourself for the court reporter?

MR. LEINBACH: Yes. Good morning. Brian Leinbach, Engstrom Lipscomb & Lack, representing the Plaintiff in this case, the Eastern Shawnee Tribe of Oklahoma.

THE COURT: Thank you. And would counsel for Defendant please identify herself and her colleagues, please?

MS. SCHWARZ: Yes. Good morning, Your Honor. Jody Schwarz from Department of Justice, Environment and Natural Resources Division, on behalf

of the Defendant. Also present with me is co-counsel, Mr. Anthony Hoang with the Department of Justice, and Ms. Shani Walker, who is with the Department of Interior.

MS. WALKER: Good morning, Your Honor.

THE COURT: Good morning. Welcome. We don't have a timer on this morning's hearing, but we have the responses of the parties to the order to show cause, and the responsibility for demonstrating jurisdiction in the Court obviously rests with the Plaintiff. And, Mr. Leinbach, I wonder if you'd proceed first.

MR. LEINBACH: Yes. Thank you, Your Honor. Good morning again. Your Honor, 26 U.S.C. § 1500 limits the jurisdiction of this Court. It acts as a jurisdictional bar to those actions that present the same claims that were filed previously in another Court. To determine whether or not an action involving the same claims are pending in another Court, the Court looks at the complaints, the two relative complaints, and makes a determination as to whether or not those two, the claims, arise out of the same operative facts and request the same relief.

This requirement is in the conjunctive, Your Honor. In other words, both requirements must be

present in order to implicate Section 1500, the actions arising out of the same operative facts and the same relief requested. This is the standard set forth in the Loveladies case.

Here, Your Honor, Plaintiff is proceeding against a similar Defendant, the United States Government. There are two cases pending, one in the District Court and one in the Court of Federal Claims. They are two distinct cases involving distinct claims.

In the District Court case, the Eastern Shawnee Tribe of Oklahoma has brought claims in equity against the United States and others to enforce trust duties, trust duties that relate to their responsibility to perform a complete, accurate and timely accounting of trust assets.

This type of an action in equity arises out of 28 U.S.C. § 1361 and 5 U.S.C. § 702. It is an action for injunctive relief to compel federal officials to perform a duty owing to the Plaintiff. It is a very specific duty, a specific duty that its jurisdiction lies solely with the District Court.

THE COURT: Now you say that Section 1361 provides a basis for jurisdiction in the District Court, is that correct? That's because it's a mandatory duty?

MR. LEINBACH: That's correct, Your Honor.

THE COURT: All right. Thank you. And that arises as a result of the 1987 Act providing or specifying that an accounting has to occur?

MR. LEINBACH: I believe that's correct. That's correct, Your Honor, yes.

Now, in contrast, in stark contrast, the Plaintiff in this case has other claims against the United States Government, and these claims are very specific and relate to other trust responsibilities that are owed to the Plaintiff as a result of many different sources, including the treaty entered into with the Eastern Shawnee Tribe of Oklahoma as well as other material acts such as the Tucker Act and the Indian Tucker Act.

Now these separate distinct duties provide for distinct relief that is only available in this Court, the United States Court of Federal Claims. These are for monetary damages relating to specific trust responsibilities with regard to the obligation of the government to generate, invest and manage Indian trust assets.

Now these trust assets are referred to time and time again in both the Plaintiff and the Defendant's papers, and these assets include such

things as the money that the government holds in trust in accounts in Treasury and other places for the benefit of the tribe. It also includes responsibilities with regard to the handling of the day-to-day operations of nonmonetary assets.

THE COURT: So you're saying the distinction really is between an equitable action and then an action for damages, money damages.

MR. LEINBACH: That's correct, Your Honor. That is the reason why the two cases were filed in the two distinct Courts and why we view these as two separate actions against the United States and the United States and others in the District Court.

THE COURT: Where does the District Court action stand? I have the docket in hand, and it appears that there is briefing under way, and it also appears that an argument has been scheduled for July 24.

MR. LEINBACH: In this case, Your Honor, the District Court case is in a bit of a holding pattern. Judge Robertson is the Magistrate Judge who is coordinating all the trust cases in the District Court. He has in the past placed a stay on all litigation in order to hear certain common issues. Although that stay has been lifted in a general sense,

essentially those cases are not proceeding forward in the normal course of litigation, in particular in my case because we entered into an agreement with the defendant in that case to seek a settlement in less formal means. Judge Robertson has been persuaded by that argument and is giving us an opportunity to pursue those efforts before continuing with the litigation.

THE COURT: All right.

MR. LEINBACH: Now, in a macro sense, the Court, Judge Robertson, has heard the trial in the Cobell case, which involves similar trust accounting issues, and that most latest trial was held in December of last year. And at the conclusion of that trial, the Judge determined that were some very real problems in seeking or actually achieving a historical trust accounting, and he is proceeding with another trial this summer to determine what remedies are available in the District Court in connection with those types of cases.

THE COURT: Is that case about to begin actually, that second trial?

MR. LEINBACH: If I'm not mistaken, it may have began yesterday. I read something about that.

THE COURT: That was my understanding.

MR. LEINBACH: Yes.

THE COURT: All right.

MR. LEINBACH: So that case is proceeding forth in that manner. I believe that Judge Robertson, without having benefitted from these comments directly, is probably taking a look to see what the outcome of that case is to determine how to proceed in the other cases that are before him.

THE COURT: That case poses somewhat different issues, the Cobell case that is, than Eastern Shawnee even in the District Court, is that correct? It's a different kind of trust arrangement. You don't have a tribe involved.

MR. LEINBACH: That's correct. They're very, very similar issues, but the main distinction is that the Cobell case concerns individual Indians and the government's trust obligations with regard to their assets. We believe that the same responsibilities are owed to the tribe in connection with the money and nonmonetary assets that the government holds in trust for the tribe.

THE COURT: Are you familiar with the Kidwell case in the D.C. Circuit?

MR. LEINBACH: I'm not, Your Honor.

THE COURT: Okay. Let's just put it this

way. It is a case that upholds an action by a person who had been in the military and wanted his military records corrected, and it proceeds on one of the same statutory bases that you're mentioning that the Eastern Shawnee case proceeded under. That is the APA, but it also invokes 1331 as a basis for federal question jurisdiction.

But ordinarily a case like that would be heard in this Court. It would be heard in this Court unless the person wanted correction of military records without a monetary remedy, and that's what happened in Kidwell. And accordingly, the D.C. Circuit said that it did, that it and the District Court before it, had jurisdiction. That jurisdiction was not displaced by this Court's exclusive jurisdiction over certain money claims.

So you might have an easier time in the D.C. Circuit than you might in this Court and this Circuit just because of the Federal Circuit's precedents. The reason I described that is obviously we have cases like Harbuck in this Court that pose some obstacles to your claim.

MR. LEINBACH: Well, Your Honor, the distinction that this case presents is that there is absolutely unique and distinct monetary relief being

requested in this case and not requested in the District Court case.

And without having to jump ahead of myself, essentially what we're looking at here is a two-prong test, both that the claims being made are made of the same operative facts. Your Honor might recall the d'Abrera case in which the Court had a similar situation before it. In that case, the Court looked to what it termed operative facts as opposed to backup facts.

And in this case, Your Honor, the operative facts in this case and the operative facts in the District Court case arise out of the very distinct trust duties that are the basis of those claims, in other words, the obligation of the government to provide a complete, accurate, timely and historic accounting of trust assets. That is the sole purpose and relief sought in the District Court case.

The trust responsibilities, the fiduciary responsibilities, arise in the Court of Federal Claims case out of day-to-day obligations to manage, invest and generate appropriate trust assets for the tribes. Now these have no relation to the specific obligation of the trust accounting. These are in relation to obtaining the proper interest on trust funds,

investing those trust funds to achieve the highest and best interest available, when the government is entering into leases on behalf of the tribe that the leases are for the fair market value. If they're trust assets such as oil and gas royalties or timber revenues or gravel and these types of trust assets that over the years, those assets have been managed and invested properly in order to achieve the highest and best use of those assets.

So we're looking at entirely different trust responsibilities, and those types of trust responsibilities are the operative facts in the complaint as pled against the Defendant, and they're entirely different from the very narrow and limited scope of the District Court case. So that's the first hurdle.

Then if there's a determination that the cases are based on the same operative facts, we then take a look at the <u>Loveladies</u> case and the <u>Keene</u> case, the U.S. Supreme Court <u>Keene</u> case, which basically identified that the Cashman (ph) exception is alive and well and it has been followed by many cases, including the <u>Loveladies</u> case, which simply says that if you have distinct relief requested in each Court that the bar, the Section 1500 bar, is not implicated.

In this case, the distinction couldn't be more specific. We have specifically pled the Court of Federal Claims complaint to request purely monetary damages, consequential, incidental damages. These are basic money damages against the Defendants for their breach of the fiduciary duty. These are entirely distinct from the very specific equitable relief requested in the District Court, which is limited simply to a historical trust accounting of trust assets. These are two distinct areas of relief requested which would not implicate Section 1500.

THE COURT: Let's explore that a little bit because the Court is obviously familiar with the d'Abrera case.

MR. LEINBACH: Sure.

THE COURT: Let's just posit for a moment that an accounting would be necessary in this Court prior to any award of monetary damages. That's the usual course these cases take. The Court has, at least the Court of Appeals has said it has, the power to order an accounting in aid of its responsibilities to render a money judgment in a case.

That raises the question whether or not the claims -- and you say there are distinct or different trust responsibilities involved in the District Court

action than in this action -- accepting that, it appears that there's a possibility of claim splitting. That is, you've split the claims that the Eastern Shawnee have respecting trust responsibilities into two pieces, one in the District Court and one here, but they could be brought together. That's the question the Court has.

MR. LEINBACH: The same issue was raised in the d'Abrera case, and in that case, the Court viewed the cause of action against the Defendants (1) in violation of the Lanham Act and the Copyright Act in the District Court case and a copyright infringement case which was properly brought here in the Court of Federal Claims. And the distinction was made in that case based on the differing responsibilities for the claims.

THE COURT: Well, they actually were two different claims. It turned out to be different causes of action, one passing off someone else's work as one's own and the second essentially reproducing without permission. It turned out there were photographs of butterflies and moths and skippers and about 1,300 of them. So they really were different claims. They had a lot of the same background, but they were different.

MR. LEINBACH: That's very similar to our case here. In a general sense, the government owes trust responsibilities to the tribe. Now these trust responsibilities take many different forms, and each of these trust responsibilities is a separate claim to be analyzed in a different way.

If you take a look at the claim for a historical trust accounting, that particular claim is very unique unto itself. It requires the analysis of what has happened in the past just with regards to the type of recordkeeping and accounting has been accomplished and determining whether that has been appropriate and meets the appropriate standard.

In this case, we're analyzing specific trust transactions such as I have a lease in front of me that was made at 10 percent of the fair market value, and the trust responsibility for the government was a breach of a fiduciary responsibility to get the fair market value for that particular transaction.

Now a historical trust accounting, Your Honor, is not necessarily needed in order to arrive at monetary damages in this Court. I disagree with that perspective. We can achieve our standard of proof in connection with those types of historical trust management activities by simply analyzing activities

themselves and determining whether or not there's been a breach of fiduciary responsibility in connection with those particular transactions, whether it be a land lease, whether it be oil and gas royalties that have been gathered and maintained on behalf of the tribe. Those are analysis by forensic experts done in connection with the specific transactions, and a historical trust accounting is simply not needed, Your Honor.

Also, as a result of the Cobell trial, Judge Robertson determined that a historical trust accounting is not possible, which means, if that's the case, that means that in order for the Eastern Shawnee Tribe of Oklahoma to proceed in the Court of Federal Claims, other means of proving damages must be utilized.

THE COURT: Well, just stop a second, because the different nature that is the individual, in a sense, nature of the claims in Cobell are somewhat different in that respect, potentially -- I'm not saying they are -- than the claims of the Eastern Shawnee in this particular case. It's just one doesn't necessarily and ineluctably dictate the result in the other.

The Court just has no idea what sorts of

accounting records were maintained by the Department of Interior and the Department of Treasury. I take it these trust accounts are actually held in the Treasury. I see nods yes.

MR. LEINBACH: That's correct, Your Honor.

THE COURT: All right.

MR. LEINBACH: The point being, Your Honor, I'm not sure that a historical trust accounting as the basis in the District Court case is necessary in order to prove damages in our Eastern Shawnee Tribe case here in the Court of Federal Claims. The Court of Federal Claims certainly has the ability to order such an accounting if it's tangential to a monetary judgment in this Court, and I accept that premise.

However, in this case where it may not even be possible to achieve such a historical trust accounting, Plaintiff is prepared to proceed forward to prove its damages in this case absent such a complete historical trust accounting, especially as sought in the District Court case.

We see this as very, very specific relief sought in the District Court case with regard to its specific obligation to provide a historical trust accounting for the tribe, and it's very distinct from the monetary damages that we seek here.

Now the only types of cases that address whether or not historical trust accounting and other types of monetary relief in this Court are the same are those, including the Keene case and also the Tohono O'odham case which deal with the overlapping issue, and I'm happy to address that issue as well.

In those cases, Your Honor, the same claims were filed in both Courts. However, in the Court of Federal Claims, the plaintiff proceeded with an additional cause of action for monetary relief, and the Court held that the requests for relief are the same. When an additional claim for monetary damages is brought here in the Court of Federal Claims, it does not act to prevent the application of Section 1500.

THE COURT: At least a substantial overlap. It doesn't have to be a complete overlap. A substantial overlap will satisfy Section 1500.

Section 1500 is a troublesome statute, and it has been such for a long time, but we're stuck with it, and we are bound in a straightforward way to apply it. That's why we have problems with these cases.

MR. LEINBACH: Also, Your Honor, the Plaintiff is bound by other jurisdictional rules that require certain actions be brought in the District

Court and certain actions be brought here.

THE COURT: Right.

MR. LEINBACH: But I think it's important to note that very recently there have been some judicial exceptions brought with regard to the analysis of the second prong, the same relief prong. That is, if the plaintiff has requested equitable relief with a monetary component as I put it in my papers in the District Court case, such as discouragement of profits, restitution and those types of things, some Courts have determined in the Ak-Chin case and the Tohono O'odham case that was sufficient to establish this overlapping relief sought.

THE COURT: That's why I raised the Kidwell case, because the D.C. Circuit and District Courts in the D.C. Circuit have construed Kidwell as a case in which the equitable relief has to have a footing on its own. That is, it can't be in essence a stalking horse for monetary relief.

MR. LEINBACH: That's correct.

THE COURT: The latter situation would trigger 1500.

MR. LEINBACH: In this case, Your Honor, Plaintiffs have been very careful in drafting their complaints in order to avoid the application of 1500,

to not include any type of requests such as discouragement and restitution in a District Court.

THE COURT: Well, by the Court's review, you've succeeded in doing that. However, I have several questions about the complaint that was filed first in the District Court and then the one that was filed in this Court. I wonder if we could turn to that. Do you have it at hand?

MR. LEINBACH: I do, Your Honor.

THE COURT: You do? If you would please, Mr. Leinbach, turn to page 12 of the complaint that was filed in District Court, and I call your attention to paragraph 34. Now this does focus on the accounting. You call it historical accounting, but the Court certainly understands what you mean.

You say the Plaintiff is entitled to declaratory and injunctive relief requiring the Defendants to provide the Plaintiff with a full, complete and up-to-date accounting of all the Plaintiffs' trust funds and preserving any claims which might be identified once that accounting is received. What did you mean by "preserving any claims which might be identified once that accounting is received"?

MR. LEINBACH: Well, it is unclear until the

beneficiary of the trust receives an accounting as to the scope of what the accounting may be. In other words, it may determine that there were other accounts that need to be considered. The government holds trust funds for the benefit of the tribe in many different types of accounts, not simple accounts in Treasury, but there's other types of accounts held at the local BIA agency office level. And until a historical trust accounting has been completed, it may not be determined that other monies may have to be included or accounted for the purposes of an entire reconciliation or an accounting.

This claim here is not preserving monetary claims in any way, shape or form. We specifically did not make any effort in the District Court case to seek what might be construed as restitution, for instance, or disbursement of profits or restatement of accounts and those types of things because those types of claims for relief have been interpreted by some Courts, I'll argue not appropriately but by some Courts as asking for monetary relief in a District Court case.

Now it may be open to interpretation to understand that when these complaints were being drafted, there was no effort here to state any type of

a complaint for monetary damages. I understand the Court's concern, but understand, if you take a look overall at the claims for relief being made here, they're purely in equity. They're purely for an accounting, for historical trust accounting.

THE COURT: All right. Thank you. I have another question on the complaint that was filed here. But I'm going to interrupt just to suggest, Laurie, I wonder if you would please check with the Clerk's office because we don't seem to have any air conditioning at all in this courtroom.

THE CLERK: Do you want me to just prop this door open?

THE COURT: Yes, if you would. Lisa, I wonder if you would please open this door and just prop it open. We'll at least get something. And I apologize to everyone for our air situation.

Now, Mr. Leinbach, let's turn to the complaint filed in this Court, and could you please go to page 13 and paragraph 31? Now there an action filed in the District Court for the District of Columbia is cited, but it's Red Cliff Band v. Kempthorne. I take it that's just a typographical error. It really means the Eastern Shawnee action?

MR. LEINBACH: That's correct, Your Honor.

THE COURT: All right. Thank you. But then in the next sentence, it says, "To the extent that such an accounting to which the Plaintiff is entitled determines or otherwise reveals that the Plaintiff has one or more additional monetary claims against the Defendant, the Plaintiff seeks damages on those claims in this action."

MR. LEINBACH: Yes, Your Honor.

THE COURT: Would you explain what that sentence means?

MR. LEINBACH: Sure. That paragraph is contained in the larger subsection which deals with equitable tolling and delayed accrual. It begins on page 10.

THE COURT: All right.

MR. LEINBACH: I addressed this issue in the reply brief. Specifically, the only reference in the Court of Federal Claims case to an accounting that's concerning the issue of delayed accrual of funds is the most basic obligation of the United States Government to provide information and accounting reconciliation with regard to describing how it handled trust assets on behalf of the beneficiary.

It was important that the tribe preserve the claims to which it has no knowledge. The vast

majority of trust-related documents, 80, 90 or a higher percent of the documents relating to the trust activity are in the possession of the United States Government even today, Your Honor. It is incumbent upon Plaintiff's counsel to preserve its right to proceed with those types of monetary claims that are discovered later in the future as a result of discovering that information.

Now that information may be discovered through the discovery process in this case when we go take a look at documents located throughout the United States, either local or at the Lenexa, Kansas, facility. However, those types of specific trust management claims may be ultimately disclosed when the government or if the government can abide by its accounting responsibilities.

So the only reason we are bringing this to the attention of the Court is we do not want to be precluded from proceeding as to those types of claims in the future if they are discovered either by our own effort or through the disclosure of an appropriate accounting.

THE COURT: Well, this language could be construed as essentially an effort to use this action as a means of collecting damages on whatever the

fruits of the District Court action happen to be in terms of the results of the accounting. You say that's not necessarily so directly. It might produce indirect secondary claims.

MR. LEINBACH: That's correct, Your Honor.

THE COURT: Well, how do you propose to get money? Let's say that the action that's pending before Judge Robertson produces an indication or even a result that the accounting has not been proper, the historical accounting has not been proper and the Eastern Shawnee actually should have some more money in the trust accounts. How do you propose to get that money?

MR. LEINBACH: Well, Your Honor, you do not request that money in a District Court. I presume that that would be a claim that would be incorporated in this case presently, because we've already made general allegations that the U.S. Government has not properly invested trust assets, monetary assets, and has not properly collected monies due on such things as oil and gas royalties and what not. So those claims are already made here in this case for monetary damages.

It may be very well that a full and complete trust accounting that's performed pursuant to some

order in the District Court may shed some light as to the value of those claims, but those claims are already made here in this Court.

THE COURT: All right. Well, splitting jurisdiction is problematic. There's no doubt about that. All right. Just a couple of fundamental points. The Arthur Andersen report in this particular case was issued when? It must have been shortly before six years prior. It must have been sometime in 2000 basically.

MR. LEINBACH: The Arthur Andersen report I think was provided to Eastern Shawnee if memory serves, and the government may have this information at their fingertips, but '06?

MS. SCHWARZ: 1996.

MR. LEINBACH: Oh, '96. '96, Your Honor. And those claims had to have been brought by 2005 I believe, and it was a one-year extension of that.

THE COURT: Okay.

MR. LEINBACH: Now that statute of limitations mainly applies to claims that may arise assuming that the Arthur Andersen report does constitute an appropriate accounting and they're fully applied to actions which would arise out of that accounting.

The position of the Plaintiff in this case is as a fundamental matter, that was not an appropriate accounting, and we believe that there have been actions, similar accountings, that have demonstrated that to be the case, number one, and number two is that, in any event, the other types of specific management and nontrust asset claims wouldn't even be incorporated in such a statute unfortunately.

THE COURT: Well, that's right, but let's talk about the historical accounting. The Court's well aware of the Indian Trust Accounting statute that's been tacked onto the Department of Interior Appropriation Acts for some time and the fact that it essentially prevents the statute of limitations from running until there is an adequate accounting. That question is answered, all right?

MR. LEINBACH: Thanks, Your Honor.

THE COURT: Thank you, Mr. Leinbach. Now I hope I haven't thrown you completely off what you wanted to say.

MR. LEINBACH: Well, I think your comments are germane and they essentially are followed by the comments that I wanted to make here today. It's important to take a look at a couple of things though. That is that the Court stated in the Loveladies case

that Section 1500 must be construed as narrowly as possible to avoid dismissing nonduplicative claims for relief. And I think that's an important starting place when taking a look at these two very distinct cases that have been in these two different jurisdictions.

The Eastern Shawnee Tribe of Oklahoma has a multitude of claims to be made against the United States Government generally relating to trust issues. These are the same types of background facts that were identified in d'Abrera. They all dealt with the issues in the sort of copyright infringement setting with regard to these images of butterflies.

It was important to understand that there has not been a single case adjudicated to my knowledge that indicates that where such distinct claims based on different operating facts are stayed here and such distinct relief sought in the two cases has ever been seen to have implicated Section 1500.

In the Claims closed cases were those where monetary damages, trust damages, were cited in, this case and nonmonetary damages sought on the accounting side on the District Court, but they also included those specific claims for restitution, discouragement of profits and other quasi-monetary damages.

THE COURT: And you're referring to the _Tohono_ and _Ak Chin_ cases?

MR. LEINBACH: That's correct, Your Honor. I also think it's germane to point out that in another CFC case involving the Winnebago Tribe, very, very similar, almost identical, types of claims being made in both the District Court and the Court of Federal Claims.

Last year we issued a status report, and I think it's germane to note that the Section 1500 issue has not been raised by the government. In that status report, the government indicated that it did not believe the Section 1500 issue was implicated here in these cases. So they certainly had not thought that these are the types of cases that should be viewed under that jurisdictional bar.

I think that's all I have to say here this morning, Your Honor. I'd certainly like the opportunity to come back and respond if you have any further questions.

THE COURT: Yes, certainly, you'll have an opportunity to reply, Mr. Leinbach.

MR. LEINBACH: I appreciate that, Your Honor. Thank you very much.

THE COURT: Ms. Schwarz?

We have weather-related hazards outside. We didn't expect them inside as well, but we have to put up with it. Thank you.

MS. SCHWARZ: When we walked in, the security guard said, don't worry, it will be much cooler upstairs.

THE COURT: Thank you.

MS. SCHWARZ: I hope they're all working on that. Good morning, Your Honor. As you initially stated, the Plaintiff has the burden of establishing the jurisdiction in this case, and the government asserts that, as far as the application of Section 1500, the Plaintiff has not met its burden.

First, the most important thing to take into consideration is the actual language of the statute. Of importance is the beginning of the statute, which states that the Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the Plaintiff has pending in any other Court any suit.

In these two cases in the District Court complaint and the Court of Federal Claims, we assert that the claims and the relief requested is substantially similar and there is definitely an overlap, and therefore, Plaintiff hasn't met its burden. And as in the statute, Courts have broken it

down into three parts. They look at the timing, the issue of claims and then the issue of relief requested. In this particular case, the parties haven't disputed the timing.

THE COURT: Well, that's right. If the complaint in this Court had been filed one day, or even this is our case in another case, even a few hours before the one in District Court, we wouldn't have this issue.

MS. SCHWARZ: The government would not concede that.

THE COURT: I understand the few hours. But at least if it were filed the prior day or before in this Court, the issue wouldn't arise.

MS. SCHWARZ: Again, the government wouldn't concede that based on the language of the statute.

THE COURT: Well, but there's fairly longstanding precedent in the Tecon case that basically would say that, Ms. Schwarz.

MS. SCHWARZ: And then given the fact that timing isn't at issue, the first thing to look at is the issue of the claim. And again, first we look at the language of the statute, which talks about jurisdiction of any claim for or in respect to which the Plaintiff has pending. A claim is in respect to a

suit if it relates to the suit, is concerned with the suit or has regard to a reference to the suit.

In this case, the complaint in the District Court and the complaint that has been filed here are essentially based on the same claims. Courts have interpreted the statute language to look at operative facts and not view both theories.

The Supreme Court has specifically said in considering these operative facts, it makes clear that Congress did not intend the statute to be rendered useless by a mere concept of identity, providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation.

THE COURT: Well, you do concede that it's not just the factual background. It's the operative facts that count I hope, the material facts.

MS. SCHWARZ: That is correct. And again, as the Supreme Court said, the facts need not be identical. It is sufficient that they're substantially the same.

Here, although Plaintiff has couched it in terms of an accounting and duties related to an accounting and it is related to the other trusts, parsing though the actual two complaints, the language of it, when it comes down to it, the operative facts

are the same. They reference the same treaties in the statement of facts for the District Court complaint. They talk about it in terms of its treaties and enter other applicable tribal law and how Congress has granted the Secretary of Interior authority. It also talks in its statement of facts in the Court of Federal Claims in terms of its treaties and other applicable law.

On the other hand, it talks about the ratification of the various treaties and then arising from these treaties, it discusses the government's alleged duties to manage and maintain the trust corpus, which consists of monetary assets and nonmonetary assets. And in examining these, it's impossible to separate an accounting duty from the other duties as recognized by the Courts in Tohono O'odham and Ak Chin.

The accounting duty necessarily arises with the other duties because you'll be looking at the same facts. You'll be looking at the same documents, the same allegations as to how things were managed and the actual trust corpus itself with the trust lines of trust resources, leases, easements, rights-of-way and resource harvesting and resource use.

THE COURT: Well, let's go back to a couple

of precedents, which we can, Ms. Schwarz, in the Supreme Court.

MS. SCHWARZ: Sure.

THE COURT: Because the Keene case in construing Section 1500 addressed an earlier case, Skinner & Eddy Corporation, in 1924 -- it's not quite ancient history, but it's old enough -- which involved a cause of action that was arising under a contract of this company with the government for shipping.

And the question arose whether or not a subsequent claim -- well, the claim was brought first in this Court. It was dismissed. Then it was brought in a State Court. The claim there, what was brought in the State Court was one that didn't include lost profits. The one that had been brought in this Court did.

When the Court of Claims decided it wanted to revoke the dismissal and reinvigorate the action here in this Court, the Supreme Court said it couldn't do that because there was enough similarity in the claims, the lost profits differential if you will, it was not material. The baseline for damages in the two was the same. And once the case was dismissed here in this Court, the plaintiffs in that case were free to file in a State Court in Seattle, Washington.

Now I have to look at that setting in particular to try to figure out whether Mr. Leinbach's argument about the difference between a historical accounting and looking at particular transactions makes sense, and you're saying it doesn't. Can you tell me where in the prior cases it doesn't?

MS. SCHWARZ: Well, first of all, if you look at the most recent cases that look and analyze the issue of the Indian Trust cases, in Tohono O'odham, the Court held that the factual basis was the same because in both actions, the Courts will have to analyze the same facts regarding the government's management and administration of the same trust funds and assets over the same time periods. And they went on to note that it's the same parties, the same trust corpus, the same assorted trust obligations, the same assorted breaches of trust.

THE COURT: Now that's a difference Mr. Leinbach endeavors to draw. He would say the duties are different. One is the duty to maintain adequate and correct historical accounts. The other is the duty to handle or manage trust assets in a fiduciary way. He proposes looking at individual actions here and not in the District Court. That's what I heard him say anyway.

MS. SCHWARZ: The reading of the complaints then doesn't limit itself to that. You have to look at the basis of the complaint and how it was pled. The Plaintiff is the master of their pleading, and you have to take face value what they say.

But as the Court recognized in Ak Chin, the nature of the Indian trust cases doesn't lend itself easily to a simple delineation to say you can have an accounting here, but that accounting is going to be different than how we look at damages in this case. The documents there are the same as here.

THE COURT: Now, Ms. Schwarz, that's one of the reasons the Court asked Mr. Leinbach a couple of questions about the complaints in the two cases.

MS. SCHWARZ: Yes.

THE COURT: Let's focus specifically on the language of the complaints if you will.

MS. SCHWARZ: Sure.

THE COURT: And perhaps you can make the point you just raised but by reference to particular paragraphs of the complaint.

MS. SCHWARZ: Sure. Well, first if you look in the District Court complaint?

THE COURT: Yes.

MS. SCHWARZ: If you look at paragraph 12,

it discusses in that paragraph the various trust properties that's been described. In (a), it talks about agreements for the use and extraction of natural resources in leases of Plaintiff's trust lands, fee easements across Plaintiff's trust lands via grazing permits, so on and so forth.

And then in paragraph 13, it talks about how Defendants have assumed the responsibility for the investment and purpose of the trust, including the trust assets. And that's in comparison to the complaint in this case, paragraph 15, in which it also talks about the Defendant has assumed control and management over the Plaintiff's trust property.

Yet even more telling is when you actually get to paragraph 23 of the complaint that was filed in this case where it specifically says the Defendant has failed to keep records and/or has failed to keep proper records regarding Plaintiff's trust accounts and assets. Defendant has never provided the Plaintiff with a full and meaningful accounting of its trust assets and trust funds.

Indeed, before filing this action, the Plaintiff filed a complaint in the United States District Court for the District of Columbia demanding a full accounting of its trust accounts, trust assets

and trust property. To date, the Defendant has failed to provide that accounting or other sufficient information which would otherwise afford the Plaintiff the ability to determine whether and to what extent it has suffered a loss as a result of the Defendant's continuing wrongdoing or other breaches of trust.

The Defendant specifically links its complaint in this case to its complaint in the District Court case and notes that it isn't quite sure of what it's looking for in this complaint unless it gets its accounting that it's seeking in the District Court complaint. Therefore, the accounting that it's seeking in the District Court complaint becomes very essential and relevant to this case by the pleadings that the Plaintiff has filed.

Additionally, as we pointed out in paragraph 31, it discusses the action that they commenced against the Secretary of the Interior and against the Treasury and the Special Trustee in the District Court, and a plain reasonable reading of this paragraph would state to the extent that such an accounting to which the Plaintiff is entitled determines or otherwise reveals that the Plaintiff has one or more additional monetary claims against the Defendant, the Plaintiff seeks damages on most claims

in this action.

The Plaintiff will also seek leave to amend its complaint to allege those additional claims and to plead the claims already advanced herein with more specificity at such time as the Defendant provides the Plaintiff with information which is currently in its possession and control.

Again, in the District Court complaint, the accounting and the information through discovery that it's seeking there is looking to almost in essence have this Court reverse down whatever the District Court decides to also plead it in this case. You can't parse out the two.

It isn't a matter of splitting jurisdiction. It's a matter of it's more -- than that. The accounting that they're seeking there is basically the claims that they've alleged in this Court. And to the extent that they don't know exactly what they want to allege in this Court, they're citing back to an accounting in the District Court to help lead the way here.

THE COURT: You have had the advantage of listening to Mr. Leinbach's and my discussion of the Kidwell case.

MS. SCHWARZ: That's correct.

THE COURT: Do you have any views on the applicability or not of Kidwell as a precedent to this matter? Because it is reasonably evident that at least Mr. Leinbach and his colleagues have tried to plead only equitable claims in the District Court.

MS. SCHWARZ: We would disagree that such a reading of the District Court complaint could be so narrowly tailored. The actual District Court complaint, as it states the nature of the action, is for an accounting and a reconciliation of its trust funds for equitable relief. A reconciliation just on the plain reading and what they seek to do with the accounting is to obtain a different balance of their trust funds, in essence, what they're seeking for in the District Court complaint.

THE COURT: Now where do you see the word "reconciliation"?

MS. SCHWARZ: In the very beginning of the complaint.

THE COURT: Oh, it's not in the prayer for relief?

MS. SCHWARZ: Actually it is also in the prayer for relief. It's in paragraph number 38, which is the counts for relief in the District Court complaint.

THE COURT: Yes.

MS. SCHWARZ: It states that the tribe may have claims for damages that cannot be ascertained until after the Defendants make a reconciliation and accounting of the tribe's trust property and accounts. In that reading of the relief that they're seeking, they're asking the District Court by the reading of this to make an equitable monetary determination to reconcile the accounts. And as Courts have held in analyzing the jurisdiction under Section 1500, there is no difference between an equitable monetary relief and plain money damages.

The reading of the District Court complaint is seeking a declaratory on this equitable relief which in essence becomes monetary relief, and then in the Court of Federal Claims, by seeking their breaches of fiduciary duty, they're seeking declaratory relief that certain duties have been breached, equitable relief and then monetary damages.

THE COURT: What do you think Mr. Leinbach and his colleagues mean when they say they want a judicial order preserving its, and that's the Eastern Shawnee Tribe's, claims for damages? What kind of relief is that?

MS. SCHWARZ: My interpretation of that is

that they're seeking a preservation of monetary damages.

THE COURT: I don't understand. If you were a District Court Judge, what would you write to do that?

MS. SCHWARZ: Again, we do disagree that the District Court has the power to do this, but you look at what's pled, not the actual relief that can be granted.

THE COURT: No, I'm just trying to figure out what that means.

MS. SCHWARZ: Right. But what it appears that they're asking the District Court to do is after this accounting is done to make a reconciliation of the accounts. For example, if it shows that they have $50,000 in the accounts prior to the new accounting and it should be $60,000 that the District Court somehow issues an order that they were wronged by $10,000, and then that gets passed on to this Court to automatically enter.

It's similar to what happened in the Cobell case, which, again, we dispute is very different from this tribal trust case. In the Cobell case, in essence, what this trial is about is just that, which is a type of potential equitable relief that

Plaintiffs are seeking. So, in this case, it appears that in the District Court, they are seeking that type of monetary equitable relief to have a reconciliation of their accounts, to somehow have the District Court put money where they claim it has been wrongfully withheld from them.

THE COURT: How can the District Court do that under its statutes? Let's say 1631 and 702 of the APA.

MS. SCHWARZ: Again, we would say that the District Court can do that. But as the Supreme Court held in Keene, it is the relief requested even if the District Court does not have jurisdiction, and that's the relief that is available, that is relevant under the Section 1500 analysis. So even though we would assert that the District Court doesn't have the jurisdiction, it's what's pled, it's what they're seeking that counts when you're trying to make a determination under Section 1500.

THE COURT: Say that again.

MS. SCHWARZ: It's the relief that they're requesting. It's what they're seeking that counts.

THE COURT: Yes.

MS. SCHWARZ: It isn't what the District Court can actually do.

THE COURT: You're saying the Supreme Court in Keene said that?

MS. SCHWARZ: Yes. I can find the cite.

THE COURT: All right. Well, I grant you that it would be a little awkward for this Court to pontificate on the powers of a District Court Judge in a case like Cobell, but in any event, let's see what Keene has to say on the matter.

MS. SCHWARZ: It's highlighted. I didn't write the page number down.

(Pause.)

MS. SCHWARZ: I apologize. It's easier on the computer.

THE COURT: Well, this is something we can look up ourselves, Ms. Schwarz. You got me curious because the Supreme Court often does not treat jurisdictional allegations that are impossible as basically binding anyway. But in any event, it's not cited in your brief, but we'll do that.

MS. SCHWARZ: Thank you.

THE COURT: Thank you. Ms. Schwarz, do you have anything further?

MS. SCHWARZ: Yes. Back to the discussion of claims and then also in terms of the relief that is entrusted, I wanted to point out that the Plaintiff's

counsel has cited heavily to Loveladies, but Loveladies can't be read in a vacuum. It has to be taken into consideration with the other cases that the Federal Circuit Court has also ruled upon.

So, in addition to Loveladies, in 2004, the Court came out with the Harbuck decision, which talked about the inclusion of other and different requested relief doesn't avoid Section 1500, and then also Cooke in 2007 in which the Court stated that relief may not be identical and really must be the same in nature, that the inclusion of other and separate relief doesn't preclude application of Section 1500.

THE COURT: Now that's talking about the relief prong --

MS. SCHWARZ: Correct.

THE COURT: -- not the claim prong, right?

MS. SCHWARZ: Correct.

THE COURT: And you're saying basically that's the part of the problem with the complaints in this case, that you can't separate accounting from monetary relief really.

MS. SCHWARZ: Correct. We argue that even applying Loveladies, applying the Court's decision in Harbuck, applying Cooke and applying the most recent cases in Tohono and Ak Chin and this Court's opinion

in d'Abrera that so long as there is overlap in the relief requested, it is not a misinterpretation of the Court's decision in Loveladies that that is part of the decision.

THE COURT: d'Abrera was really a different sort of case. There the claim was actually different.

MS. SCHWARZ: Correct.

THE COURT: The material facts alleged respecting the claim. Under the Lanham Act, it just had a different predicate even though the background was all the same from a copyright infringement claim.

MS. SCHWARZ: Correct. But in talking about the relief requested, how Courts analyzed that in the Section 1500 context, it isn't just Loveladies, but it's the jurisprudence of the Court as they've considered the statute.

Furthermore, in Loveladies, the Court held that and looked at whether or not the complaints sought distinctively different relief. We assert that in this case, the two complaints do not seek distinctively different relief and that there is substantial overlap in terms of the accounting and eventual monetary decisions that the Plaintiffs would like the Court to make.

THE COURT: Now the Court often has thoughts

that that kind of distinction is one that the D.C. Circuit had to wrestle with in Kidwell. Do you accept Kidwell as a precedent? It's a D.C. Circuit case. It doesn't bind this Court. What should the Court do with Kidwell?

MS. SCHWARZ: Not having Kidwell exactly in front of me --

THE COURT: You don't have it, do you?

MS. SCHWARZ: I have a lot of cases but unfortunately not that one. But in the Court's discussion of Kidwell and my prior reading of Kidwell, it is part of the D.C. Circuit's jurisprudence and part of its precedence. It is something that the Court does take into consideration in making its determination. But I feel that what actually transpired in Kidwell doesn't necessarily preclude the dismissal of the Plaintiff's complaint.

In this case, given the overlapping operative facts, the fact that what they seek and what they've pled in the District Court complaint is very similar and also what's been pled in the Court of Federal Claims complaint and also the overlapping of the relief that's requested, given those clear factors, just in looking at this case alone and also in the jurisprudence that has come down over the

years, Section 1500 does act as a bar for the jurisdiction for this case.

THE COURT: All right. Let's just ask one more question. What would happen if Plaintiffs had filed the Eastern Shawnee case in this Court on let's say December 20 and filed the Eastern Shawnee case in the District Court on December 28? You wouldn't have this argument and you'd essentially have two parallel cases.

MS. SCHWARZ: Well, the government does take the position that a stretched reading of the statute is that "has pending" means has pending at any time. So, as long as there is a complaint that's filed in another Court, it would direct the Court of Federal Claims.

THE COURT: So you don't accept Tecon as a precedent?

MS. SCHWARZ: No.

THE COURT: All right. The Court understands. Thank you.

MS. SCHWARZ: Thank you very much, Your Honor.

THE COURT: Thank you. Mr. Leinbach?

MR. LEINBACH: Yes, thank you, Your Honor.

Well, let's take a look a little bit at the

Keene case. Now the Keene case is sort of the beginning of this idea of overlapping relief in that it doesn't have to be exactly the same.

However, it's very important to note that the Keene case, the Supreme Court case, specifically endorsed in language implying Section 1500 to the facts of the case, the Court finds it unnecessary to consider, much less repudiate, the Court judicially created sections to Section 1500 found in Telcon Engineers.

THE COURT: Tecon.

MR. LEINBACH: Tecon?

THE COURT: Yes. You had an "L" in it.

MR. LEINBACH: Engineers, Cashman and Boston Five. This is the same judicially accepted exception that Loveladies again noted in its rule when it considered the facts before it. What we're looking for here is whether or not we have the same distinct relief requested in both cases. That is simply not the case here, Your Honor.

In our Court of Federal Claims case, this is a case for breach of fiduciary duty. We're going to establish those breaches of fiduciary duty by the documents that are available to us. We're going to analyze specific trust management conduct and

activities from whatever documentation we can find, whether that is provided by way of some type of an accounting or whether that is simply we find it in other means, either in possession of the tribe or in other document depositories around the country. We will advance with those specific claims.

Those types of claims aren't even anticipated, are not even on the same planet as those brought in the District Court. The support specifically deals with one trust responsibility to provide a historical trust accounting and that's it.

Now much was said about what was in the District Court complaint, and I believe paragraph 38 was not quoted correctly. In the fourth claim for relief, that is specifically a preservation of damage claims section. It's on page 12, Your Honor.

And as stated before, it says specifically the tribe may have claims for damages that cannot be ascertained until Defendants make a reconciliation and accounting to the tribe's trust, property and assets.

Reconciliation there is not restitution or disposal of profits. Reconciliation is simply a matching of account activity. In other words, did the receipt, did the actual transaction match with the ledger recording that transaction?

A reconciliation is an accounting process to determine whether or not certain activities -- let's say there was a check issued to a particular vendor for gasoline for the reservation and it was for $102.32. A reconciliation simply takes that receipt and compares it with the actual ledger to determine whether or not those are the same. Reconciliation does not in any way, shape or form anticipate that there's going to be any type of restitution or any type of correction, monetary correction made.

Specifically, the next sentence is important here. It says, "Some of these claims should they exist will have to be filed in the United States Court of Federal Claims." The relief that we provisioned in the District Court specifically states that monetary relief is not being sought in this case. We could not have been more direct in our approach to these cases.

The Eastern Shawnee Tribe of Oklahoma in bringing cases against the United States Government must play by the jurisdictional rules of the Court system. We are required in some cases to parcel out specific claims to different Courts. There are jurisdictional reasons for this. These aren't splitting claims as sometimes occurs in Federal Court where you have a single Defendant and you're bringing

separate claims against these Defendants at separate times in separate cases.

That's not the situation here. Here we're forced to make a jurisdictional determination of whether to bring claims. The Court of Federal Claims specifically requires and the jurisdiction specifically requires that we file our monetary damages claims that specifically relate to specific trust conduct here in this Court.

But what will come forth, Your Honor, we're going to have specific analysis of specific trust activity that will determine that the United States Government failed in its fiduciary responsibility to do the specific managerial responsibilities in an appropriate fiduciary manner. That's what this case is all about.

You're not going to see the same case in District Court. District Court is going to be analyzing accounting, all the documents, ledgers appropriate to support whatever accounting it is that the government believes has been accomplished on behalf of the Eastern Shawnee Tribe.

So we're going to take a look at accounting. We'll determine whether or not that's an appropriate accounting. We're going to have funds of accountants.

We're going to have other types of accountants and CPAs testify as to what has been provided, if anything, that does or does not comport to be an accounting sufficient to satisfy their responsibilities to perform historical trust accounting. That is 100 percent different than the claims advanced in this case.

Now the Court should be concerned about having two cases tried, the same case tried, duplicative cases tried in separate Courts. That is simply not the case here. These are very, very different cases. We are in our view required to file the cases where we filed the cases. And I think the case law does very clearly identify in these circumstances that Section 1500 is not implicated.

THE COURT: Thank you, Mr. Leinbach.

MR. LEINBACH: Thank you very much.

THE COURT: Ms. Schwarz, do you have anything further?

MS. SCHWARZ: I have just a few things. Just a quick clarification in regards to the Winnebago decision, it is asserted that the government conceded that Section 1500 did not apply, and that's incorrect. The government stated that it would review the issue and reserved the ability to assert Section 1500

jurisdictional provisions at a later time.

THE COURT: This is in the Winnebago case?

MS. SCHWARZ: Correct.

THE COURT: And that is pending before which Judge?

MS. SCHWARZ: I believe that is before --

THE COURT: That's all right. I can check.

MR. LEINBACH: Judge Sweeney, Your Honor.

MS. SCHWARZ: And then secondly, looking at the District Court complaint as it's been pled where it asked for an accounting and a reconciliation, again, you have to look at the complaint, the words that were used, the complaint as it was pled. It may be easy now to state that the reconciliation in the District Court complaint doesn't state any type of monetary relief. It doesn't anticipate any monetary relief.

But in going through it and looking at exactly what's required for an accounting in the District Court and what would be required after the alleged liability was potentially proved in this Court and what in this Court would have to be done, it's a distinction without a difference. Basically, in essence, the same proceedings would be happening.

THE COURT: Well, there's no doubt that the

same proceedings could happen. The question is whether the complaints actually plead them in that way, and we've gone through that.

MS. SCHWARZ: Again, in looking at the case law that's come through and the reasons behind Section 1500 and how it's evolved, it is to make the Plaintiff choose a forum to prevent the government from defending the same suit in two different Courts.

THE COURT: Well, that's the reason it's been put forward, but you'd have to go back to the Cotton claims arising out of the Civil War to get the antecedents for the statute. You can argue whether that's appropriate right now, but anyway, it is what it is, and we're obliged as a Court to apply it honestly and straightforwardly.

MS. SCHWARZ: Again, the government asserts that in applying Section 1500 as the Courts have analyzed it and applied it, this case should be dismissed because it doesn't meet the jurisdictional requisites under the statute.

THE COURT: All right. Well, thank you.

MS. SCHWARZ: Thank you, Your Honor.

THE COURT: Thank you for your perseverance in the conditions in the courtroom. Actually everyone stayed awake and paid attention, and it's remarkable.

This case is also appropriately briefed, and the Court appreciates that. The parties have done a good job in responding to the order to show cause.

And unless there's anything further, the Court is prepared to state that the submissions on the order to show cause are complete. Is that correct, Mr. Leinbach?

MR. LEINBACH: That's correct, Your Honor. Thank you very much.

THE COURT: Ms. Schwarz?

MS. SCHWARZ: Yes, that's correct.

THE COURT: All right. And with thanks for your preparation and your participation today, we are in adjournment.

THE CLERK: All rise.

(Whereupon, at 11:14 a.m., the hearing in the above-entitled matter was concluded.)

//

//

//

//

//

//

//

//

## REPORTER'S CERTIFICATE

DOCKET NO.: 06-917L

CASE TITLE: Eastern Shawnee Tribe of OK v US

HEARING DATE: June 10, 2008

LOCATION: Washington, D.C.

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before the United States Court of Federal Claims.

Date: June 10, 2008

_______________________________

LaShonne Robinson
Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018